Filed 11/24/14  Tabarrejo v. Superior Court CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JUDITH TABARREJO, | H040435 |
| Petitioner, | (Santa Clara County Super. Ct. No. 1-12-CV-237103) |
| v. | |
| THE SUPERIOR COURT OF SANTA CLARA COUNTY, | |
| Respondent. | |
| PRINCESS RETIREMENT HOMES, INC., | |
| Real Party in Interest. | |

Petitioner Judith Tabarrejo was employed as a caregiver by real party in interest Princess Retirement Homes, Inc. (PRH).  After Tabarrejo left her employment, she filed a claim with the Labor Commissioner for unpaid wages and other wage-related claims. The Labor Commissioner awarded Tabarrejo $135,203.69.

PRH appealed the Labor Commissioner's order to the superior court and posted the undertaking required by Labor Code section 98.2.[1]  Tabarrejo moved to dismiss the appeal on the ground that PRH was a suspended corporation that lacked the capacity to sue.  The trial court granted Tabarrejo's motion to dismiss.  PRH then failed to pay the

---

[1]  All further statutory references are to the Labor Code, unless otherwise stated.

amount due under the Labor Commissioner's order within 10 days, so Tabarrejo asked the court to release the undertaking to her. But PRH disputed Tabarrejo's entitlement to the undertaking on a number of grounds, arguing primarily that since PRH's corporate powers were suspended, the court lacked jurisdiction over the matter *ab initio* and should never have accepted the appeal and the undertaking. After a series of motions, the trial court concluded that PRH did not have standing to file the appeal and ordered the release of the undertaking to PRH's owners, James and Judith Morales.

We hold that the trial court erred as a matter of law when it released the undertaking to the Moraleses based on its conclusion that PRH did not have standing to file the appeal. The question presented is one of legal capacity, not standing. Although the appeal was invalid when filed because PRH lacked the capacity to sue because its corporate powers had been suspended, PRH could have retroactively validated the appeal by reviving its corporate powers. That PRH elected not to revive its corporate powers did not retroactively deprive the court of jurisdiction to accept the appeal and the undertaking for filing or to dismiss the appeal based on PRH's incapacity to sue. We also conclude that the trial court abused its discretion when it failed to rule on Tabarrejo's request for attorney fees. We shall therefore grant Tabarrejo's request for writ relief and direct the trial court to vacate its order releasing the undertaking to the Moraleses and to enter a new order releasing the undertaking to Tabarrejo. We will also remand for a hearing on Tabarrejo's claim for attorney fees.

### FACTS

PRH, an assisted living facility, employed petitioner Judith Tabarrejo as a caregiver from June 2, 2009, through September 30, 2011. Pursuant to an oral agreement, PRH initially paid Tabarrejo $8 per hour. On April 1, 2010, PRH raised Tabarrejo's rate of pay to $8.25 per hour.

Tabarrejo lived at the assisted living facility during her employment with PRH. She worked an average of 16 hours per day, performing caretaking duties for facility "patients." Tabarrejo quit her job on September 30, 2011.

California Secretary of State records reveal that PRH: (1) incorporated in 1996; (2) was suspended by the Secretary of State in April 1999 for failing to file a statement of information; and (3) was suspended by the Franchise Tax Board in March 2000 for failing "to meet franchise tax requirements (e.g., failure to file a return, pay taxes, etc.)." As of November 2013, PRH's powers, rights, and privileges remained suspended. The same records list James Morales as the CEO of PRH and Judith Morales as its agent for service of process. James and Judith Morales are the "owners" and "shareholders" of PRH; they did not work at the facility.

## PROCEDURAL HISTORY

### Tabarrejo's Complaint Before the Labor Commissioner

On November 23, 2011, Tabarrejo filed a complaint with the Labor Commissioner seeking compensation for unpaid regular, overtime, and minimum wages and for failure to provide meal and rest periods; waiting time penalties (§ 203); and interest. Tabarrejo named PRH and James and Judith Morales as defendants, asserting they were joint employers.

### Proceedings Before the Labor Commissioner

On November 5, 2012, the Labor Commissioner conducted a hearing. Tabarrejo appeared and was represented by counsel. James and Judith Morales appeared in their individual capacity and on behalf of PRH. All defendants were represented by the same attorney. Florence Deloso (a caregiver), Mary Matias (the business manager), and the Moraleses testified on behalf of PRH.

3

At the beginning of the hearing, the hearing officer asked when PRH was incorporated. Defense counsel responded, "It's not current." Defense counsel then asked Judith Morales whether PRH had paid its "dues" and "registration fee," to which she responded, "Yes" under oath. After the hearing officer stated that the Secretary of State records showed a Franchise Tax Board suspension in 2000, defense counsel stated, "Right. And after that, they've paid their registration, but they indicate it's still not listed as current." The hearing officer stated: "Suspended or not, a corporation is still subject to the *Reynolds* [*v. Bement* (2005) 36 Cal.4th 1075] decision[,] which requires that the common law elements of alter ego liability be shown for the individuals," and "[i]f the plaintiff cannot show the common law elements of alter ego liability, I'm just going to . . . dismiss the individuals." The hearing officer concluded that PRH's status as a suspended corporation did not "eliminate[] the corporate entity for the purpose of being the employer," and dismissed the individual defendants.

Tabarrejo testified that from July 2009 through September 2011, she worked 210 days at a base rate of $8 an hour and 410 days at a base rate of $8.25 an hour. During that time, she worked 1,020 overtime hours and 852 double time hours at a base rate of $8 per hour, and 1,884 overtime hours and 1,619 double time hours at a base rate of $8.25 per hour. She claimed she was not relieved of all duties for at least half an hour on any of those days, did not receive rest breaks, and had to watch patients while she ate.

PRH did not have time records and did not offer any evidence to contradict Tabarrejo's testimony. According to the hearing officer, PRH "offered schedules and testimony" about what might have happened or what could have happened, but "did not offer evidence about what actually did happen to [Tabarrejo], in terms of hours worked, on any particular day." "One of [PRH's] witnesses testified that she was told to take a meal period each day and could get coverage so she did not have to watch a patient while she ate." "However, that same witness also acknowledged that sometimes she would have to watch a patient while she ate." There was evidence that Tabarrejo "would leave

4

the facility on personal errands and that there was coverage if a staff member had to leave or take a break."

Nine days after the hearing, the Labor Commissioner issued an Order, Decision, or Award (Order) in favor of Tabarrejo, awarding her $135,023.69. The award included unpaid wages ($77,217.92), liquidated damages under section 1194.2 ($39,246), accrued interest ($13,114.17), and waiting time penalties under section 203 ($5,445.60). The hearing officer dismissed James and Judith Morales as defendants pursuant to *Reynolds v. Bement*, *supra*, 36 Cal.4th 1075, because Tabarrejo had not established the common law elements of alter ego liability against them. Thus, PRH became the sole defendant subject to the Order of the Labor Commissioner.

### Proceedings in the Trial Court

PRH filed an appeal of the Order in the superior court on December 4, 2012;[2] the Moraleses did not appeal the Order. As required by section 98.2, subdivision (b), the Moraleses deposited an undertaking of $135,023.69 with the court on behalf of PRH[3] so it could appeal the Order. The Moraleses claim they posted the undertaking because

---

[2] Although the copy of the notice of appeal in the record is dated November 28, 2012, the notice was not filed that day. On our own motion, we have taken judicial notice of the docket entries for this case in the trial court's public website, which indicate that the appeal and the undertaking were filed on December 4, 2012. (<http://www.sccaseinfo.org/> [as of Nov. 24, 2014].) The parties agree that the undertaking was filed on December 4, 2012.

[3] The record suggests that Judith Morales obtained a cashier's check to pay for the undertaking. The only document in the record is a copy of a withdrawal slip, which indicates that Judith Morales withdrew funds to pay for the undertaking. The withdrawal slip does not identify the owner of the account from which the money was withdrawn (i.e., whether it belonged to the Moraleses or PRH or some other entity). PRH contends the undertaking was deposited by both Judith and James Morales on behalf of PRH. We adopt that description for this opinion.

5

PRH had no assets. Since the Moraleses (who had been dismissed as individual defendants) did not appeal the Order, it is final as to them.

In April 2013, Tabarrejo filed a motion to dismiss the appeal on the grounds that PRH was a suspended corporation, lacked the capacity to sue, and could not be a party for any purpose. PRH responded with a motion to amend the pleadings and substitute Judith Morales in place of PRH. PRH argued that as a suspended corporation, it could not properly appear in court, and that Judith Morales was the real employer in this case. In a declaration in support of the motion, PRH's counsel stated that at the time of the administrative hearing, "due to inadvertence, mistake or excusable neglect," he was unaware "that there was a successor corporation, Ilikai Homes, Inc., as of January 1st, 2011." He did not provide any more information regarding the relationship between PRH, the Moraleses, and Ilikai Homes, Inc. Counsel also stated that the Moraleses spoke Tagalog and "some English," that he assumed that they had accurately identified the corporate entity to him, and that he learned that the corporation was suspended by doing Internet research "just prior to the hearing."

On May 15, 2013, the court ruled on both motions. The court denied PRH's motion to amend, stating: "[g]ood cause is not shown in that [PRH] was represented at the Labor Commissioner hearing by counsel who agreed that the correct name of the employer was [PRH], and not Morales." The court granted Tabarrejo's motion to dismiss on "several" grounds, "the least of which is that [PRH] . . . is a suspended corporation and cannot be a party for any purpose. The time for appeal was not tolled, so therefore it was not timely." The court dismissed PRH's appeal and awarded Tabarrejo $6,875 as "reasonable attorney fees" for the motions. PRH has not sought appellate review of either the order granting Tabarrejo's motion to dismiss or the order denying PRH's motion to amend. Although Tabarrejo's motion to dismiss was granted, she did not obtain a judgment of dismissal.

6

On or about May 28, 2013, and August 8, 2013, Tabarrejo provided the court with proposed orders to disburse the undertaking to her.

In August 2013, PRH obtained new counsel. On August 13, 2013, PRH and Judith Morales filed a written objection to Tabarrejo's proposed orders. Although Judith Morales was not a party to the action, she joined in the objection as "the individual who posted the undertaking." PRH argued that since the appeal was not timely, the superior court had no jurisdiction to accept the notice of appeal or the undertaking. PRH also asserted that "because the very purpose of the appeal and deposit of [the undertaking had] been frustrated, it was fundamentally unfair and contrary to the purpose of the statute" to disburse the funds to Tabarrejo. PRH objected that it had been denied an opportunity to have a trial de novo on the merits since the appeal was dismissed on procedural grounds for lack of jurisdiction. PRH argued that there was good cause to stay execution of the judgment because PRH's former counsel had "erroneously filed a notice of appeal . . . despite the fact that [PRH] was a suspended corporation and therefore had no standing and no authority to . . . appeal." PRH advised the court that it was filing a request for stay of execution with the Labor Commissioner. PRH argued that if the trial court was unwilling to conduct a trial de novo on the merits, then it was "fundamentally unfair and a violation of due process" to accept PRH's undertaking and disburse it to Tabarrejo. PRH asked the court to either permit the appeal to proceed on the merits or void the filing of the notice of appeal *nunc pro tunc*.

In response, Tabarrejo argued that PRH had the opportunity to establish that it was not the "real party interest" at the hearing before the Labor Commissioner. "Instead, it agreed to the dismissal of the individual [defendants], Judith and James Morales, and defended the claim as the corporate employer." Tabarrejo further argued that because PRH's standing to sue was unaffected by its suspended status, the superior court had jurisdiction to accept the appeal and the undertaking. And she argued that PRH had frustrated its ability to appeal by failing to pay its taxes and revive its corporate powers.

7

Tabarrejo also disputed PRH's contention that the undertaking should be returned to the Moraleses, arguing that the source of the undertaking was of no relevance.

### *Post-Hearing Application for Administrative Relief From the Labor Commissioner*

In August 2013, PRH and the Moraleses filed a post-hearing application for administrative relief with the Labor Commissioner, requesting that the Order be amended to (1) delete the order dismissing the Moraleses as defendants; and (2) substitute the Moraleses as the employer in place of PRH. The application asserted that the Moraleses had been dismissed by the Labor Commissioner due to the "mistake and inadvertence" of their former counsel. The Moraleses agreed, if the Order was amended, to "waive the protection under *Reynolds v. Bement*" and to stipulate, for the purposes of the application, "to liability as an alter ego" of PRH. The Moraleses said all they wanted was "to have their day in court." According to the application, the Moraleses posted the undertaking because PRH "has no assets." They also argued that their former counsel had "erroneously filed" the notice of appeal from the Labor Commissioner's decision and facilitated the posting of the undertaking. They asserted that defense counsel's mistakes "should be rectified through [their] administrative application before the damage to the Morales[es] becomes permanent and legally unfixable." The Moraleses asked the Labor Commissioner to stay execution of the judgment in the superior court and to file an amended order to allow them to file a notice of appeal in the superior court.

On September 20, 2013, PRH and the Moraleses filed an ex parte application for "stay of execution of judgment" with the trial court to allow time for the Labor Commissioner to rule on their application for administrative relief.

The Labor Commissioner denied all of PRH's and the Moraleses' requests in a letter dated September 24, 2013. The Labor Commissioner explained that the Moraleses were not entitled to relief under section 98, subdivision (f) because such relief is only available when a defendant fails to attend a hearing, and the Moraleses attended the

8

hearing—both in their individual capacity and on behalf of PRH—and were represented by counsel. The Labor Commissioner also denied the Moraleses' request to amend the Order to modify the legal name of the business (§ 98, subd. (h)(2)) since the hearing officer had found that PRH was the correct defendant and had dismissed the Moraleses because "alter ego liability was unfounded." Finally, the Labor Commissioner refused to set aside the Order or grant another hearing.

***Further Proceedings in the Trial Court***

On October 7, 2013, PRH's counsel sent a letter to the trial court recounting PRH's failed application for relief from the Labor Commissioner and arguing that the proper action to restore the parties to the *status quo ante* was to return the undertaking to the Moraleses. Defense counsel argued, "The owners of the cash deposit, Judith and James Morales, are not the employer" and asserted that they were not parties to the appeal. Relying on the court's earlier finding that the appeal was not timely, PRH argued that the court "never had jurisdiction . . . and should not have accepted the cash deposit *ab initio*" and that the undertaking should therefore be returned to the Moraleses. The court ordered counsel to appear on October 24, 2013, to be heard regarding the undertaking.

Tabarrejo filed an opposition to PRH's request for return of the undertaking. Tabarrejo argued, among other things, that under section 98.2, subdivision (b), forfeiture of the undertaking was mandatory. She asserted that since the appeal had been dismissed and PRH had failed to pay the award within 10 days of the dismissal, "the only action left for the court [was] to order release of the undertaking to [Tabarrejo]." Tabarrejo also requested $26,415 in additional attorney fees.

PRH filed a reply, which argued that "if the Court is not disposed to provide [PRH] with a *de novo* hearing and a trial on the merits, then it would be fundamentally unfair and a violation of due process to retain their [*sic*] cash deposit for an appeal that

9

was disallowed in the first place, and then disburse that money to [Tabarrejo] without a trial on the merits . . . ." PRH also objected that the amount Tabarrejo requested in attorneys fees was excessive for a "run of the mill wage claim."

Stating that this case presents a "very tough issue," the court ruled in favor of PRH. The court found "that because [PRH] had no standing to file the appeal in the first place, there was no appeal, and therefore the bond should be returned to the party who posted it." The court ordered the clerk to release the $135,023.69 undertaking to the Moraleses.[4] The court did not rule on Tabarrejo's request for attorney fees.

Tabarrejo filed this petition for writ of mandate, prohibition, or other appropriate relief on December 10, 2013, asking this court to direct the trial court to vacate its order.

## DISCUSSION

Tabarrejo argues that the trial court abused its discretion, acted in excess of its jurisdiction, and erred as a matter of law when it released the undertaking to the Moraleses. She contends the trial court should have disbursed the undertaking to her under section 98.2, subdivision (b) because PRH's appeal was dismissed in May 2013, PRH failed to pay the amount awarded by the Labor Commissioner within 10 days of the order of dismissal, and PRH still has not paid the amount due. She argues that the trial court had jurisdiction to accept PRH's appeal and the undertaking, and that PRH's

---

[4] When Tabarrejo filed her writ petition, her counsel was unable to obtain a signed copy of the order from the court. Counsel therefore filed a declaration, which described her efforts to obtain a copy of the order and stated that the court had signed the proposed order prepared by PRH's counsel. On our own motion, we obtained copies of two orders the trial court filed on November 23, 2013, and we take judicial notice of those orders. (Evid. Code, §§ 452, subd. (d), 459.) The trial court signed and filed PRH's proposed order without making any substantive changes. The court also signed Tabarrejo's proposed order directing release of the undertaking to Tabarrejo's counsel, whose firm was identified in the order as "KGACLC." We assume the latter order was executed by mistake, since it is inconsistent with the court's oral pronouncement at the hearing, its tentative ruling, and its written order on the motion.

10

incapacity to sue or to defend itself based on its status as a suspended corporation was not a jurisdictional defect. She also requests costs and attorney fees for litigating PRH's appeal.

PRH responds that its appeal was "effectively void and/or moot on the day it was filed," and that the trial court should not have accepted the undertaking and was not authorized to release it to Tabarrejo. PRH argues that since the trial court had no jurisdiction from the start, the undertaking must be returned to the Moraleses. PRH also argues that if it "was not entitled to file an appeal and have a new trial, then it stands to reason that the [trial court] cannot in fairness retain and then disburse what would be [the] appellant's money. To do so would be an unconstitutional taking . . . and a violation of due process." PRH argues, alternatively, that if the court had jurisdiction, then it had the inherent power to permit the Moraleses to prosecute the appeal. Finally, PRH argues that it would be unfair to award Tabarrejo attorney fees because her counsel contributed to the "procedural quandary" that the parties find themselves in.

Before addressing the parties' contentions, we examine the Moraleses' role in these writ proceedings.

### *The Moraleses are not parties to these writ proceedings*

The captions on the preliminary opposition and the return filed with this court state that they were filed by "Princess Retirement Homes, Inc., et al., Real Parties in Interest." The plural references "et al." and "Parties" suggest that there is more than one real party in interest. In addition, the preliminary opposition asserts that the Moraleses are "the true real parties in interest" and the return alleges they are "Real Parties In Interest." But, as we shall explain, the Moraleses are not parties to the writ proceedings in this court.

Only PRH appealed the Labor Commissioner's Order to the superior court. If they had wanted to, the Moraleses could have appealed the Labor Commissioner's finding that

11

they were not employers, but they elected not to appeal that ruling. And the trial court denied PRH's motion to amend—which sought to substitute Judith Morales as the defendant in place of PRH—and neither the Moraleses nor PRH sought review of that order. Moreover, the 10-day jurisdictional time limit for the Moraleses to request a trial de novo of the Order expired long ago. (§ 98.2; *Pressler v. Donald L. Bren Co*. (1982) 32 Cal.3d 831, 837 (*Pressler*) [the "time for filing a notice of appeal from a decision of the Labor Commissioner is mandatory and jurisdictional"].)

In writ proceedings, " ' "[r]eal party in interest" has generally been defined as "any person or entity whose interest will be directly affected by the proceedings . . . ." [Citation.] While the real party in interest is "usually the other party to the lawsuit or proceeding being challenged" [citation], it may be . . . "anyone having a direct interest in the result" [citation], or "the real adverse party . . . in whose favor the act complained has been done." ' " (*Connerly v. State Personnel Bd*. (2006) 37 Cal.4th 1169, 1178 (*Connerly*).) Although the Moraleses may have a direct interest in the result of these writ proceedings because they allegedly provided the funds for the undertaking, as we shall explain, they are not real parties in interest because they were not designated as parties in Tabarrejo's writ petition. Since a writ proceeding in the Court of Appeal is an original proceeding, and not an appeal, the petition "serves as the complaint," and "must name all of the parties." (*Tracy Press, Inc. v. Superior Court* (2008) 164 Cal.App.4th 1290, 1296-1297, citing Cal. Rules of Court, rule 8.490(b)(2).) Tabarrejo's writ petition names PRH as the real party in interest, but does not name the Moraleses. Since the petition does not allege that the Moraleses are real parties in interest, they are not parties to these proceedings. (*Id.* at pp. 1296-1297.)

### Overview of Berman Hearing Process

The Supreme Court has reviewed the statutory scheme that governs employee wage claims on several occasions, most recently in *Sonic-Calabasas A, Inc. v. Moreno*

(2013) 57 Cal.4th 1109, 1127-1129 (*Sonic*). The *Sonic* court explained that " ' "If an employer fails to pay wages in the amount, time or manner required by contract or by statute, the employee has two principal options. The employee may seek *judicial* relief by filing an ordinary civil action against the employer for breach of contract and/or for the wages prescribed by statute. (§§ 218, 1194.) Or the employee may seek *administrative* relief by filing a wage claim with the [Labor Commissioner] pursuant to a special statutory scheme codified in sections 98 to 98.8. The latter option was added by legislation enacted in 1976 . . . and is commonly known as the 'Berman' hearing procedure after the name of its sponsor." ' " (*Sonic*, at pp. 1127-1128; italics added.)

After an employee files a complaint with the Labor Commissioner for nonpayment of wages, section 98, subdivision (a) provides for three alternatives. The Labor Commissioner may: (1) accept the matter and conduct an administrative hearing; (2) prosecute a civil action for the collection of wages and other money payable to employees; or (3) take no further action on the complaint. (*Sonic*, *supra*, 57 Cal.4th at p. 1128, citing *Murphy v. Kenneth Cole Productions, Inc*. (2007) 40 Cal.4th 1094, 1115 (*Murphy*).) " 'The Berman hearing procedure is designed to provide a speedy, informal, and affordable method of resolving wage claims. . . . "[T]he purpose of the Berman hearing procedure is to avoid recourse to costly and time-consuming judicial proceedings in all but the most complex of wage claims." ' " (*Murphy*, at p. 1115.)

The procedural rules for a Berman hearing underscore its purpose. If the Labor Commissioner conducts a hearing, he or she must do so within 90 days. (*Sonic*, *supra*, 57 Cal.4th at p. 1128.) " ' "[T]he pleadings are limited to a complaint and an answer; the answer may set forth the evidence that the defendant intends to rely on . . . ; if the defendant fails to appear or answer no default is taken and the commissioner proceeds to decide the claim, but may grant a new hearing on request. (§ 98.) The commissioner must decide the claim within 15 days after the hearing. (§ 98.1.)" ' " (*Sonic*, at p. 1128.)

13

" 'Within 10 days after notice of the decision any party may appeal to the appropriate court, where the claim will be heard de novo; if no appeal is taken, the commissioner's decision will be deemed a judgment, final immediately, and enforceable as a judgment in a civil action. (§ 98.2.) If an employer appeals the Labor Commissioner's award, "[a]s a condition to filing an appeal pursuant to this section, an employer shall first post an undertaking with the reviewing court in the amount of the order, decision, or award. The undertaking shall consist of an appeal bond issued by a licensed surety or a cash deposit with the court in the amount of the order, decision, or award." (§ 98.2, subd. (b).)' " (*Sonic*, *supra*, 57 Cal.4th at p. 1129.)

PRH asserts that the "stated purpose of the undertaking is to secure an appellant's right to a trial de novo." (Underscoring original.) Contrary to PRH's assertion, the purpose of the undertaking " 'is to discourage employers from filing frivolous appeals and from hiding assets in order to avoid enforcement of the judgment.' " (*Sonic*, *supra*, 57 Cal.4th at p. 1129.) Consistent with this purpose, the undertaking requirement only applies to employers; an employee need not file an undertaking to appeal. (§ 98.2, subd. (b).)

" 'The timely filing of a notice of appeal forestalls the commissioner's decision, terminates his or her jurisdiction, and vests jurisdiction to conduct a hearing de novo in the appropriate court.' [Citations.]" (*Murphy*, *supra*, 40 Cal.4th at p. 1116.) "The trial court 'hears the matter, not as an appellate court, but as a court of original jurisdiction, with full power to hear and determine it as if it had never been before the labor commissioner.' " (*Id.* at pp. 1116-1117.) " 'The decision of the trial court, after de novo hearing, is subject to a conventional appeal to an appropriate appellate court.' " (*Id.* at p. 1116.)

The *Sonic* court summarized relevant aspects of the Berman statutes as follows: "In sum, the Berman statutes provide important benefits to *employees* by reducing the costs and risks of pursuing a wage claim in several ways. First, the Berman hearing itself

14

provides an accessible, informal, and affordable mechanism for laypersons to seek resolution of such claims.  [Citation.]  Second, section 98.2, subdivision (c) discourages unmeritorious appeals of Berman hearing awards by providing that a party who unsuccessfully appeals an award must pay the other party's costs and attorney fees.  [Citation.]  . . .  Fifth, the Berman statutes ensure that an employee will actually collect a judgment or award by mandating that the Labor Commissioner use her [or his] best efforts to collect [the] award and by requiring the employer to post an undertaking for the amount of the award if it takes an appeal.  [Citation.]"  (*Sonic*, *supra*, 57 Cal.4th at pp. 1129-1130, italics added.)

 With this statutory framework in mind, we turn to the principles governing corporate capacity to sue or defend an action.

### *Corporate Capacity to Sue or Defend*

 Under California law, a corporation ordinarily has the capacity to sue.  (See Corp. Code, § 207 [corporation generally has "all of the powers of a natural person in carrying out its business activities"]; *Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1603-1605 (*Color-Vue*).)  But a corporation that has had its powers suspended "lacks legal capacity to prosecute or defend a civil action during its suspension."  (*Sade Shoe Co. Inc. v. Oschin & Snyder* (1990) 217 Cal.App.3d 1509, 1512 (*Sade*).)  On the other hand, a suspended corporation may be sued and a default judgment may be entered upon its failure to respond.  (*Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300, 1306.)

 "The 'corporate powers, rights and privileges' of any domestic corporate taxpayer may be suspended for failure to pay certain taxes and penalties.  (Rev. & Tax. Code, § 23301.)  This means the suspended corporation cannot sell, transfer or exchange real property in California, and contracts entered into during the time of suspension are voidable . . . through legal action.  [Citation.]  . . .  Nor, during the period of suspension, may the corporation prosecute or defend an action, seek a writ of mandate, appeal from an adverse judgment, or renew a judgment obtained before suspension.  [Citation.]"

15

(*Center for Self-Improvement & Community Development v. Lennar Corporation* (2009) 173 Cal.App.4th 1543, 1552 (*Center*).)  "The purpose of Revenue and Taxation Code section 23301 is to ' "prohibit the delinquent corporation from enjoying the ordinary privileges of a going concern," ' in order to pressure it into paying its taxes.  (*Peacock Hill Assn. v. Peacock Lagoon Constr. Co*. (1972) 8 Cal.3d 369, 371  . . .[(*Peacock Hill*)]) That purpose, in turn, 'is satisfied by a rule which views a corporation's tax delinquencies, after correction, as mere irregularities.' " (*Center*, at p. 1552.)

In cases of Franchise Tax Board suspensions, such as PRH's suspension in 2000, a "suspended corporation can regain its corporate powers by filing all required tax returns, paying the necessary taxes, penalties or fees due, and applying to the Franchise Tax Board for a certificate of revivor.  (Rev. & Tax. Code, § 23305.)  This reinstatement or revivor generally is 'without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture . . . .' (*Id*., § 23305a.)" (*Center*, *supra*, 173 Cal.App.4th at p. 1553.)  Thus, the revival of corporate powers retroactively validates any procedural steps taken on behalf of the corporation in the prosecution or defense of a lawsuit while the corporation was under suspension.  (*Benton v. County of Napa* (1991) 226 Cal.App.3d 1485, 1490 (*Benton*).)

"Most litigation activity has been characterized as procedural for purposes of corporate revival.  For example, a judgment obtained during suspension is validated by subsequent revivor.  [Citations.]  A motion to dismiss an appeal because of a party's suspension may be denied if the party obtains a certificate of revivor.  [Citations.]  . . . The corporate defense of an action undertaken during suspension may be validated by later revival of corporate powers.  [Citations.]." (*Benton*, *supra*, 226 Cal.App.3d at pp. 1490-1491, citing *Traub Co. v. Coffee Break Service, Inc*. (1967) 66 Cal.2d 368, 371 (*Traub*) and other cases.)  "In sum, the revival of corporate powers enables the previously suspended party to proceed with the prosecution or defense of the action and validates a

16

judgment obtained during suspension. [Citations.]" (*Center*, *supra*, 173 Cal.App.4th at p. 1553.)

A corporation's powers, rights, and privileges may also be suspended if a corporation fails to file annual statements of information pursuant to Corporations Code section 1502, as PRH failed to do. (See Corp. Code, § 2205.) "[A] corporation suspended under the Corporations Code, like a corporation suspended under the Revenue and Taxation Code, is also disabled from participating in litigation activities." (*Palm Valley Homeowners Assn., Inc. v. Design MTC* (2000) 85 Cal.App.4th 553, 556, 560.) The corporation may revive its powers by complying with the requirements of Corporations Code section 2205, subdivision (d). (*Id.* at pp. 561-562.)

***The trial court had jurisdiction to accept PRH's appeal***

PRH's corporate incapacity to sue or to defend itself did not deprive the trial court of jurisdiction to accept the appeal. "Corporate incapacity is nothing more than a legal disability, depriving the party of the right to come into court and represent its own interests. As such, lack of capacity is not a jurisdictional defect and is waived if not properly raised. [Citation.] . . . Thus, the suspended status of corporate powers at the time of filing suit does not impede the trial court's jurisdiction to proceed, nor does a suspension after suit commences but before rendition of judgment deprive the court of jurisdiction or render the judgment void." (*Center*, *supra*, 173 Cal.App.4th at pp. 1552-1553, citing *Traub*, *supra*, 66 Cal.2d at p. 371.)

Courts have distinguished "between procedural steps taken on behalf of the suspended corporation while under suspension, which can be resuscitated by revival, and substantive defenses that accrue during the time of suspension, which cannot." (*Center*, *supra*, 173 Cal.App.4th at p. 1554, citing *Benton*, *supra*, 226 Cal.App.3d at pp. 1490-1491.) The statute of limitations is regarded as a substantive defense. If an action is commenced while the corporation is suspended, the corporation's subsequent revival

17

does not prevent the running of the statute of limitations; if the statute runs prior to revival, the corporation's action will be time-barred, even if the complaint would otherwise have been timely. (*Center*, at p. 1554; *Sade*, *supra*, 217 Cal.App.3d at p. 1513.)

This appears to be the rule the trial court relied on, in part, when it ruled on Tabarrejo's motion to dismiss. The court held: "The time for appeal was not tolled, so therefore [the appeal] was not timely." In the dispute over the release of the undertaking, PRH relied on the trial court's timeliness finding to support its argument that the court was without jurisdiction to accept the notice of appeal and the undertaking. As we shall explain, the trial court erred to the extent its rulings were based on the conclusion that the appeal was not timely filed because of PRH's incapacity to sue or to defend itself.

We begin with the rule that timely filing of the notice of appeal and the undertaking is both mandatory and jurisdictional. (*Pressler*, *supra*, 32 Cal.3d 831, 837; *Palagin v. Paniagua Construction, Inc*. (2013) 222 Cal.App.4th 124, 140 (*Palagin*).) If the appeal and the undertaking are not filed within the time set forth in section 98.2, the trial court is without jurisdiction to hear the case. (*Pressler*, at p. 837; *Palagin*, at p. 140.) But the appeal and the undertaking in this case were filed within the time set forth in the statute. Section 98.2, subdivision (a) provides that an appeal of a Labor Commissioner order must be filed "[w]ithin 10 days after service of notice" of the order and that "[f]or the purposes of computing the 10-day period after service, Section 1013 of the Code of Civil Procedure" applies. Since the Order was served by regular mail, under Code of Civil Procedure section 1013, PRH was entitled to five additional days, or a total of 15 days, to file its appeal. The Order was served on November 19, 2012, and PRH's appeal and the undertaking were filed on December 4, 2012, 15 days later. PRH's appeal was therefore timely. But the trial court concluded that it was untimely, presumably because PRH was suspended at the time the notice of appeal was filed. Although the trial court did not explain its reasoning behind its timeliness ruling, it appears the court treated

18

the section 98.2 deadline for filing a notice of appeal as a statute of limitations and held that even though the appeal was timely under section 98.2, the action was barred because PRH was suspended when it filed its appeal.

In *Bourhis v. Lord* (2013) 56 Cal.4th 320 (*Bourhis*), the California Supreme Court reviewed the question of a court's jurisdiction when a notice of appeal is timely filed by a suspended corporation. A plaintiff corporation and others filed a civil action against multiple defendants. (*Id.* at p. 323.) Before trial, the defendants learned that the plaintiff corporation had been suspended and filed a motion to preclude it from offering any evidence at trial. The trial court denied the motion, contingent on the corporation reviving its corporate powers. The defendants prevailed at trial and the plaintiffs, including the suspended corporation, filed timely notices of appeal from both the judgment and a postjudgment order awarding costs and attorney fees. (*Ibid.*) The defendants filed motions in the Court of Appeal to dismiss the corporation's appeals on the ground that its corporate powers were still suspended. The corporation opposed the motions with evidence that its corporate powers had been revived seven days after the motions were filed. The Court of Appeal denied the motions and the Supreme Court granted review of the question whether the revival of the corporation's powers validated its earlier notice of appeal. (*Id.* at pp. 323-324.)

The *Bourhis* court stated: "If revival of corporate powers occurs while a valid appeal can still be taken, the question appears easy; the revival would validate a prior notice of appeal and permit the appeal to proceed. The appeal would be timely, and little purpose would be served by requiring the corporation to file another, essentially identical, notice of appeal. But appeals are subject to jurisdictional time limits. A notice of appeal must be filed within 60 days after service of the notice of entry of judgment. (Cal. Rules of Court, rule 8.104(a).) 'The time to file notice of appeal, both in civil and criminal cases, has always been held jurisdictional in California.' [Citation.] As to both appeals at issue here, this time had expired before [the plaintiff corporation's] corporate powers

19

were revived.  Should the later revival validate the earlier invalid notice of appeal in this circumstance?" (*Bourhis*, *supra*, 56 Cal.4th at pp. 325-326.)  The court held that it did.  The Supreme Court reviewed two prior cases in which it had held that the revival of corporate powers after an appeal had been filed did not prevent the appellant from proceeding with the appeal, and it declined to overrule those cases.  (*Id.* at pp. 325-328.)

The *Bourhis* court observed that a number of Court of Appeal cases have held that the running of a statute of limitations is a substantive defense that may not be prejudiced by the corporation's later revival of its corporate powers.  (*Bourhis*, *supra*, 56 Cal.4th at p. 328.)  The Supreme Court acknowledged the tension between the rule articulated in the statute of limitations cases (no retroactive revival) and the rule for notices of appeal (retroactive revival), and concluded that "the two approaches can be reconciled."  (*Id.* at p. 329.)  The court explained that Revenue and Taxation Code section 23305a provides that revival " 'shall be without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture,' " and that the statute of limitations cases "explain that those statutes provide a substantive defense that later revival of corporate powers cannot prejudice."  (*Ibid.*)  The notice of appeal cases, on the other hand, "implicitly concluded that the expiration of the time to file a valid notice of appeal does not provide an 'action, defense or right' within the meaning of [Revenue and Taxation Code] section 23305a.  . . . Similarly, being in a position to move to dismiss an untimely appeal is not a 'right' under that statute.  Thus interpreted, the two rules—one concerning appeals, the other concerning statutes of limitations—can coexist."  (*Ibid.*, citing *Rooney v. Vermont Investment Corp*. (1973) 10 Cal.3d 351 (*Rooney*), and *Peacock Hill*, *supra*, 8 Cal.3d 369.)  The court stated that while "filing a timely notice of appeal is a jurisdictional requirement, . . . what is jurisdictionally required is that the notice of appeal be timely, not that it be filed by an active corporation."  (*Bourhis*, at p. 329.)  Since the notices of appeal in *Bourhis* "were timely even if invalid when filed," the

"corporation's later reinstatement made the earlier, invalid but *timely*, notices of appeal valid and still timely." (*Ibid.*, italics original.)

Section 98.2, subdivision (a) provides: "Within 10 days after service of notice of an order, decision, or award [of the Labor Commissioner] *the parties may seek review by filing an appeal* to the superior court, where *the appeal* shall be heard de novo." (Italics added.) Based on its plain language, section 98.2, subdivision (a) sets forth the time for "filing an appeal." It is not a statute of limitations. Therefore, the rule regarding appeals, not statutes of limitations, applies in this case. That the notice of appeal is filed in the superior court for de novo review does not alter our conclusion. (*Pressler*, *supra*, 32 Cal.3d at p. 836 [the rules governing conventional appeals apply to appeals in which a trial de novo is required].) Since PRH's notice of appeal was "timely, even if invalid when filed," the superior court had jurisdiction to accept the appeal and the undertaking, notwithstanding PRH's lack of capacity as a suspended corporation. (*Bourhis*, 56 Cal.4th at p. 329.)

In *Bourhis* and the cases it relied on, the revival of corporate powers retroactively validated a previously invalid notice of appeal and the parties were allowed to proceed with their appeals. (*Bourhis*, *supra*, 56 Cal.4th at p. 323 [corporation that revived its powers seven days after motion to dismiss its appeal allowed to proceed with appeal]; *Peacock Hill*, *supra*, 8 Cal.3d at pp. 370-371 [the respondent moved to dismiss the appeal on the ground that the appellant was a suspended corporation; the appellant had just revived its powers and later filed a certificate of revivor; motion to dismiss properly denied]; *Rooney*, *supra*, 10 Cal.3d at pp. 356, 359 ["The revival of corporate powers validated the procedural steps taken on behalf of the corporation while it was under suspension and permitted it to proceed with the appeal"].)

Unlike the corporations in *Bourhis*, *Peacock Hill*, and *Rooney*, PRH has not taken any action to revive its corporate powers and its counsel's statements at oral argument suggest PRH has no intention of reviving its powers. Does a different rule apply here,

21

where the corporation has not made any attempt to revive its corporate powers? In our view, the answer is no. That the notice of appeal was invalid when filed and has never been validated by the revival of PRH's corporate powers does not mean the trial court was without jurisdiction to accept the appeal and the undertaking for filing in December 2012. As plainly stated in *Traub*, "the suspended status of corporate powers at the time of filing the action by a corporation does not affect the jurisdiction of the court to proceed." (*Traub*, *supra*, 66 Cal.2d at p. 371.)

When PRH filed its appeal in the trial court, there was always a possibility that it would cure its incapacity by reviving its corporate powers. Like the corporations in *Bourhis* and *Peacock Hill*, PRH could have revived its corporate powers while Tabarrejo's motion to dismiss was pending. Indeed, it is an abuse of discretion to deny a corporation's request for a continuance to pay its taxes and obtain a certificate of revivor. (*Color-Vue*, *supra*, 44 Cal.App.4th at p. 1606.) That PRH elected not to revive its powers and retroactively validate its prior litigation activity did not retroactively divest the court of jurisdiction to hear the appeal. The court had jurisdiction over the parties and the subject matter when the appeal and the undertaking were filed; it also had jurisdiction months later to dismiss the action based on PRH's incapacity. PRH's decision not to cure its incapacity affected PRH's right to proceed with the litigation, but it did not divest the trial court of jurisdiction. To the extent the trial court's order was based on the erroneous belief that it did not have jurisdiction to accept PRH's notice of appeal and the undertaking, that was error.

It was always within PRH's powers to cure the "procedural quandary" it found itself in and obtain a trial de novo on the merits of Tabarrejo's wage claims. All it had to do was revive its corporate powers by paying its taxes and filing a statement of information. PRH's contentions that Tabarrejo and her counsel and the Labor Commissioner contributed to this alleged "procedural quandary" are without merit.

*The trial court erred when it held that PRH did not have standing to appeal*

The trial court found that "because Defendant [PRH] had no standing to file the appeal in the first place, there was no appeal, and therefore the bond should be returned to the party who posted it," with directions to the clerk to release the undertaking to the Moraleses. But, the "[s]uspension of corporate powers results in a lack of *capacity* to sue, not a lack of *standing* to sue." (*Color-Vue*, *supra*, 44 Cal.App.4th at pp. 1603-1604, fns. omitted, original italics, citing *Traub*, *supra*, 66 Cal.2d at p. 370.) " 'There is a difference between the *capacity* to sue, which is the right to come into court, and the *standing* to sue, which is the right to relief in court.' [Citation.] 'Incapacity is merely a legal disability, such as infancy or insanity, which deprives a party of the right to come into court. The right to relief, on the other hand, goes to the existence of a cause of action. It is not a plea in abatement, as is lack of capacity to sue. [Citation.]' " (*Id.* at p. 1604; original italics.) Since a suspended corporation (like PRH) lacks only the capacity to sue and to defend itself, but does not lack standing, we conclude that the trial court erred when it ordered the undertaking released to the Moraleses to the extent it reasoned that PRH lacked standing to sue.

*Tabarrejo—not the Moraleses—was entitled to the undertaking*

Section 98.2, subdivision (b) provides, in relevant part: "The undertaking shall be on the condition that, if any judgment is entered in favor of the employee, the employer shall pay the amount owed pursuant to the judgment, and *if the appeal is* withdrawn or *dismissed without entry of judgment, the employer shall pay the amount owed pursuant to the order, decision, or award of the Labor Commissioner* unless the parties have executed a settlement agreement for payment of some other amount, in which case the employer shall pay the amount that the employer is obligated to pay under the terms of the settlement agreement. *If the employer fails to pay the amount owed within 10 days of*

entry of the judgment, *dismissal,* or withdrawal *of the appeal*, or the execution of a settlement agreement, *a portion of the undertaking equal to the amount owed*, or the entire undertaking if the amount owed exceeds the undertaking, *is forfeited to the employee*." (Italics added.)

Contrary to PRH's assertions, section 98.2, subdivision (b) does not require or guarantee a new trial. The statute recognizes that appeals of Labor Commissioner decisions may be resolved in a variety of ways, including a trial de novo, withdrawal of the appeal, dismissal, or settlement. Section 98.2, subdivision (b) does not limit the grounds for dismissal of an appeal. Furthermore, when the appeal is dismissed without a settlement, and the employer fails to pay the amount awarded by the Labor Commissioner within 10 days of dismissal, section 98.2, subdivision (b) expressly provides for forfeiture of the undertaking to the employee; it does not provide for the release of funds to individuals who posted the undertaking on behalf of the employer.

PRH's appeal was dismissed without entry of judgment in May 2013. There was no settlement and PRH did not pay the amount of the Labor Commissioner's Order within 10 days of the order of dismissal. Under the plain language of section 98.2, subdivision (b), the entire undertaking, which equals the amount awarded by the Labor Commissioner, "is forfeited to the employee," Tabarrejo. The trial court therefore erred when it ordered the undertaking released to the Moraleses.

### Costs and Attorney Fees

Tabarrejo has requested (1) costs under California Rules of Court,[5] rules 8.485-8.493; and (2) costs and attorney fees under section 98.2, subdivision (c).

Rules 8.485 through 8.493 apply to writ proceedings within the original jurisdiction of the Court of Appeal and the California Supreme Court, including this writ.

___

[5] All further rules citations are to the California Rules of Court.

(Rule 8.485(a).)  Rule 8.493 provides that the prevailing party is entitled to costs if we resolve the writ proceeding by written opinion, but that this court has the discretion to award or deny costs in the interests of justice.  Since Tabarrejo is the prevailing party and we have resolved this writ proceeding by written opinion, we shall exercise our discretion to award her costs in this proceeding.

Section 98.2, subdivision (c), provides:  "If the party seeking review by filing an appeal to the superior court is unsuccessful in the appeal, *the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal*, and assess that amount as a cost upon the party filing the appeal.  An employee is successful if the court awards an amount greater than zero."  (Italics added.)

In her response to PRH's request for return of the undertaking, Tabarrejo asked for $26,415 in attorney fees incurred after the motion to dismiss was granted.  PRH challenged the hourly rate charged by one of Tabarrejo's attorneys and argued that the total amount claimed was unreasonable for a "run of the mill wage claim."  PRH also argued that Tabarrejo was not entitled to attorney fees because "[t]his problem was created by all parties and all counsel and should not be [PRH's] burden to bear."  The trial court did not rule on Tabarrejo's request for attorney fees.

Generally, the amount of statutory or contractual attorney fees to be awarded is a matter within the trial court's discretion, which we review for an abuse of discretion.  But the determination of the legal basis for an attorney fees award is a question of law, which we review de novo.  (*Connerly*, *supra*, 37 Cal.4th at p. 1175.)

Exercising de novo review, we conclude that Tabarrejo was entitled to an award of attorney fees and costs under section 98.2, subdivision (c).  PRH appealed the Labor Commissioner's Order to the trial court.  PRH's appeal was dismissed for lack of corporate capacity.  Thus, PRH was unsuccessful in its appeal.  Upon dismissal of the appeal, PRH became liable for the full amount awarded by the Labor Commissioner, which was $135,023.69.  (§ 98.2, subd. (b).)  Since PRH was unsuccessful in its appeal

25

and Tabarrejo recovered more than zero, the court was required to "determine the costs and reasonable attorney's fees incurred by the other parties to the appeal [(Tabarrejo)], and assess that amount as a cost upon the party filing the appeal [(PRH)]." (§ 98.2, subd. (c).)

Since the trial court's order is silent on Tabarrejo's request for attorney fees, we conclude that the court abused its discretion by failing to exercise its discretion and rule on the fee request. (*Marriage of Gray* (2007) 155 Cal.App.4th 504, 515 [court's failure to exercise its discretion is "itself an abuse of discretion"].) Although Tabarrejo is entitled to attorney fees and costs under section 98.2, subdivision (c), the amount of the costs and fees is within the discretion of the trial court. We will therefore remand this matter to the trial court to determine the amount of the costs and fees to be awarded.

## DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to: (1) vacate its November 23, 2013 order granting PRH's request for return of its cash deposit and releasing the undertaking to the Moraleses, (2) enter a new order denying PRH's request for return of its cash deposit, granting Tabarrejo's request to disburse the undertaking to her, and directing the clerk of the court to release the undertaking to Judith Tabarrejo; and (3) conduct a hearing and rule on Tabarrejo's request for attorney fees.

Tabarrejo is entitled to her costs for this writ proceeding, in an amount to be determined by the trial court, including any costs and attorney fees that may be assessed as costs pursuant to section 98.2, subdivision (c).

26

_____

Márquez, J.

WE CONCUR:


_____

Bamattre-Manoukian, Acting P.J.


_____

Grover, J.