[No. A121982. First Dist., Div. Four. May 20, 2009.]

CENTER FOR SELF-IMPROVEMENT AND COMMUNITY
DEVELOPMENT, Plaintiff and Appellant, v.
LENNAR CORPORATION et al., Defendants and Respondents.

1546

**COUNSEL**

Lozeau Drury, Michael R. Lozeau, Richard T. Drury, Suma Peesapati; Law Offices of Andrew L. Packard, Andrew L. Packard and Michael P. Lynes for Plaintiff and Appellant.

O'Melveny & Myers, Debra S. Belaga, Peter Obstler and Marjory A. Gentry for Defendants and Respondents Lennar Corporation, Lennar Homes of California, Inc., Lennar Communities, Inc., Lennar-BVHP, LLC and Lennar Associates Management, LLC.

Wendel, Rosen, Black & Dean, Daniel Rapaport and Thiele R. Dunaway for Defendant and Respondent Gordon N. Ball, Inc.

---

**OPINION**

**REARDON, J.**—Appellant, the Center for Self-Improvement and Community Development (Center), sued respondent developers[1] on allegations of generating asbestos dust during their construction activities in the Bayview Hunters Point community. Although it complied with all the prerequisites for bringing a citizen suit to enforce Proposition 65,[2] at the time of giving the mandatory 60-day notice and thereafter filing its complaint, the Center's corporate powers had been suspended. Entering judgment for respondents following the granting of their motion for judgment on the pleadings, the trial court ruled that this suspension of corporate powers at the time of serving notice was a defense that could not be cured by the Center's subsequent revivor.

Resolution of this appeal involves the interplay of the 60-day notice statute governing Proposition 65 citizen enforcement, and the corporate suspension and revivor statutes. We conclude that respondents' challenge to the complaint did not raise a noncurable affirmative defense. Rather, invocation of the Center's lack of capacity was a mere plea in abatement. Having attained reinstatement prior to judgment, the Center regained its capacity to proceed with prosecution of the pending litigation. Accordingly, we reverse the judgment.

## I. BACKGROUND

The Center is a nonprofit organization based in San Francisco. It operates an education and training center for families and children in the Bayview Hunters Point neighborhood. The Center is located adjacent to, and downwind of, the Hunters Point Shipyard parcel "A" redevelopment project.

---

[1] Respondents are Lennar Corporation, Lennar Homes of California, Inc., Lennar Communities, Inc., Lennar-BVHP, LLC, and Lennar Associates Management, LLC (collectively, Lennar), and Gordon N. Ball, Inc.

[2] The Safe Drinking Water and Toxic Enforcement Act of 1986. (Health & Saf. Code, § 25249.5 et seq.)

Respondent Lennar-BVHP, LLC, is the master developer for this redevelopment project. Its construction site preparation and development activities have been extensively regulated and monitored by all levels of government—local, state and federal.

On May 23, 2007, the Center provided respondents with a 60-day notice of its intent to bring a private enforcement action for ongoing violations of Proposition 65. The Center also sent this letter to all necessary public enforcers. These public enforcers chose not to commence and prosecute a Proposition 65 action against the alleged violations, and the Center went forward as a citizen enforcer, filing the complaint on August 2, 2007.

The complaint alleged that during respondents' construction activities on the Hunters Point project, they exposed community members and workers to asbestos without warning of that exposure, in violation of Proposition 65. The Center prayed for (1) an injunction to prevent respondents from further engaging in construction activities that generate asbestos dust and expose community members and workers to the toxin, without providing Proposition 65 warnings; (2) an assessment of penalties in the amount of $2,500 per day for each violation; and (3) its attorney fees and costs.

Respondents answered the complaint, and nearly two months later moved for judgment on the pleadings. The motion asserted that the Center was a suspended corporation at the time it served the 60-day notice, the 60-day notice was thus "defective as a matter of law," and therefore the court lacked subject matter jurisdiction.

The Franchise Tax Board suspended the Center's corporate status on May 1, 2007, for failure to file its tax returns. Acting to resolve the issue, the Center regained active corporate status by at least December 21, 2007.

Ruling for respondents, the trial court reasoned that compliance with the 60-day notice requirement was jurisdictional and strictly construed, and the Center's suspended corporate status when serving the notice was a defense that could not be obviated by revival of that status. This appeal, raising purely questions of law which we review de novo, followed.

## II. DISCUSSION

A. *Statutory Background*

1. *Proposition 65 Notice Requirement*

Proposition 65 is a "right to know" statute requiring companies that expose consumers to carcinogens or reproductive toxins to provide a reasonable and clear warning. (Health & Saf. Code, § 25249.6.) It is a remedial law,

designed to protect the public, and thus we construe its provisions broadly to accomplish that protective purpose. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 314 [58 Cal.Rptr.2d 855, 926 P.2d 1042].)

■ Proposition 65 provides for citizen enforcement if the enumerated public prosecutors do not initiate diligent prosecution within 60 days of service of notice of purported violations to the alleged violator and the public attorneys. (Health & Saf. Code, § 25249.7, subd. (d)(1).) Successful enforcement actions can result in the assessment of serious civil penalties, up to $2,500 per day for each violation. (*Id.*, subd. (b)(1).) Where, as here, the notice alleges failure to warn of exposure to chemicals known to cause cancer or reproductive toxicity, the notice must include a certificate of merit stating that the private enforcer "has consulted with one or more persons with relevant and appropriate experience or expertise who has reviewed facts, studies, or other data regarding the exposure to the listed chemical . . . , and that, based on that information, the [certifier] believes there is a reasonable and meritorious case for the private action." (*Id.*, subd. (d)(1).) Further, "[f]actual information sufficient to establish the basis of the certificate of merit" must be included with the certificate served on the Attorney General. (*Ibid.*)

■ Statutory notice is a mandatory condition precedent to establishing a citizen's right to commence a Proposition 65 enforcement action in the public interest. It provides the public prosecutors with appropriate information to assess whether to intervene on the public's behalf, and affords the accused the opportunity to avert litigation by settling with the plaintiff or curing any violation. (*Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America* (2007) 150 Cal.App.4th 953, 963–964 [58 Cal.Rptr.3d 778] (*Consumer Advocacy*).)

The certificate of merit element of the notice requirement operates as a brake on improvident citizen enforcement. First, armed with factual information going to the merits of the citizen's claim of violation, the Attorney General can pursue prelitigation efforts to deter a suit that is frivolous, or engage with the parties to resolve the matter before a lawsuit is launched. (*DiPirro v. American Isuzu Motors, Inc.* (2004) 119 Cal.App.4th 966, 974–975 [14 Cal.Rptr.3d 787] (*DiPirro*).) Second, the statute calls for sanctions for frivolous actions, an obvious deterrent. When the action proceeds to judgment, the trial court may review the underlying factual basis for the certificate of merit. If it concludes there was no credible factual basis supporting the certificate of merit, the action is deemed frivolous as defined, thus empowering the court to impose sanctions. (Health & Saf. Code, § 25249.7, subd. (h)(2).)

### 2. *Corporate Suspension and Revivor Statutes*

■ The "corporate powers, rights and privileges" of any domestic corporate taxpayer may be suspended for failure to pay certain taxes and penalties. (Rev. & Tax. Code, § 23301.) This means the suspended corporation cannot sell, transfer or exchange real property in California, and contracts entered into during the time of suspension are voidable by the other party or parties through legal action. (*Id.*, §§ 23302, subd. (d), 23304.1, subd. (a), 23304.5.) As well, a suspended corporation cannot prevent another from adopting its corporate name (*Boyer v. Jones* (2001) 88 Cal.App.4th 220, 224–226 [105 Cal.Rptr.2d 824]) or borrow money, execute notes or sell stock (*Silvey v. Fink* (1929) 99 Cal.App. 528, 532 [279 P. 202]). Nor, during the period of suspension, may the corporation prosecute or defend an action, seek a writ of mandate, appeal from an adverse judgment, or renew a judgment obtained before suspension. (*Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300, 1306 [87 Cal.Rptr.2d 358].)

The purpose of Revenue and Taxation Code section 23301 is to " 'prohibit the delinquent corporation from enjoying the ordinary privileges of a going concern,' " in order to pressure it into paying its taxes. (*Peacock Hill Assn. v. Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369, 371 [105 Cal.Rptr. 29, 503 P.2d 285].) That purpose, in turn, "is satisfied by a rule which views a corporation's tax delinquencies, after correction, as mere irregularities. . . . There is little purpose in imposing additional penalties after the taxes have been paid." (*Ibid.*) In other words, the suspension statutes are not intended to be punitive. (*Cadle Co. v. World Wide Hospitality Furniture, Inc.* (2006) 144 Cal.App.4th 504, 512 [50 Cal.Rptr.3d 480].)

■ A plea that a corporation lacks capacity to maintain an action because its corporate powers have been suspended for nonpayment of taxes " 'is a plea in abatement which is not favored in law, is to be strictly construed and must be supported by facts warranting the abatement' at the time of the plea. [Citations.]" (*Traub Co. v. Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, 370 [57 Cal.Rptr. 846, 425 P.2d 790] (*Traub*).) Pleas in abatement do not challenge the justness or merits of a plaintiff's claim, but rather object to the place, mode, or time of asserting a claim. (*Nevills v. Shortridge* (1905) 146 Cal. 277, 278 [79 P. 972].)

Corporate incapacity is nothing more than a legal disability, depriving the party of the right to come into court and represent its own interests. As such, lack of capacity is not a jurisdictional defect and is waived if not properly raised. (*American Alternative Energy Partners II v. Windridge, Inc.* (1996) 42 Cal.App.4th 551, 559 [49 Cal.Rptr.2d 686].) Not surprisingly, unless mandated by governing statute, the capacity of the plaintiff to sue is not an

element of a cause of action and the plaintiff corporation need not allege it is qualified to do business in this state or that it has paid all state taxes. (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 994, fn. 4 [277 Cal.Rptr. 517, 803 P.2d 370].) Thus, the suspended status of corporate powers at the time of filing suit does not impede the trial court's jurisdiction to proceed, nor does a suspension after suit commences but before rendition of judgment deprive the court of jurisdiction or render the judgment void. (*Traub, supra*, 66 Cal.2d at p. 371.)

■ A suspended corporation can regain its corporate powers by filing all required tax returns, paying the necessary taxes, penalties or fees due, and applying to the Franchise Tax Board for a certificate of revivor. (Rev. & Tax. Code, § 23305.) This reinstatement or revivor generally is "without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture . . . ." (*Id.*, § 23305a.)

■ Our Supreme Court has held that the revival of corporate powers during the course of litigation validates earlier acts occurring prior to judgment, as well as matters occurring postjudgment. (*Peacock Hill Assn. v. Peacock Lagoon Constr. Co., supra*, 8 Cal.3d at pp. 373–374 [motion to dismiss appeal because of party's suspension not warranted where corporate powers revived by payment of delinquent taxes].) Subsequent corporate revivor retroactively validates actions in the course of litigation such as obtaining an attachment (*A. E. Cook Co. v. K S Racing Enterprises, Inc.* (1969) 274 Cal.App.2d 499, 500–501 [79 Cal.Rptr. 123]); applying for and obtaining an extension of a use permit (*Benton v. County of Napa* (1991) 226 Cal.App.3d 1485, 1492 [277 Cal.Rptr. 541] (*Benton*)); making and opposing of motions and engaging in discovery (*Diverco Constructors, Inc. v. Wilstein* (1970) 4 Cal.App.3d 6, 12 [85 Cal.Rptr. 851]); and taking an appeal (*Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351, 359 [110 Cal.Rptr. 353, 515 P.2d 297]). In sum, the revival of corporate powers enables the previously suspended party to proceed with the prosecution or defense of the action and validates a judgment obtained during suspension. (*Diverco Constructors, Inc. v. Wilstein, supra*, 4 Cal.App.3d at p. 12; see *Traub, supra*, 66 Cal.2d at p. 372 [disapproving case in which judgment for suspended corporation, which secured reinstatement on appeal, was reversed with no consideration of question of abatement].)

Similarly, a plaintiff may not take the defendant's default by virtue of the defendant's inability to defend due to suspension of corporate powers, where the defendant consummated revival proceedings upon the grant of a continuance. (*Schwartz v. Magyar House, Inc.* (1959) 168 Cal.App.2d 182, 189–190 [335 P.2d 487].) The reviewing court in *Schwartz* clarified that the taking of a default judgment against a suspended corporate defendant disabled from

defending is not a " 'right' " within the meaning of Revenue and Taxation Code section 23305a that accrued to the plaintiff and could be prejudiced by subsequent reinstatement. (*Schwartz, supra*, at p. 190.)

■ As we explained in *Benton*, over the years the courts have created a distinction between procedural steps taken on behalf of the suspended corporation while under suspension, which can be resuscitated by revival, and substantive defenses that accrue during the time of suspension, which cannot. (*Benton, supra*, 226 Cal.App.3d at pp. 1490–1491.) The statute of limitations is regarded as a substantive defense. (*Id.* at p. 1491.) Thus, subsequent revival does not prevent the running of the statute of limitations where an action is commenced during the period of suspension; if the statute runs prior to revival, the action is time-barred. (*Sade Shoe Co. v. Oschin & Snyder* (1990) 217 Cal.App.3d 1509, 1513 [266 Cal.Rptr. 619].)

## B. *Analysis*

The Center challenges the trial court's ruling that compliance with the 60-day notice requirement is jurisdictional and strictly construed, and therefore suspension of its corporate powers at the time of serving notice was a defense that could not be cured by revivor. This ruling was wrong, for several reasons.

First, the trial court relied on *DiPirro* for the proposition that compliance with the notice provisions is jurisdictional, but that case says nothing about jurisdiction. Rather, the court in *DiPirro* held that statutory notice, including the certificate of merit and supporting data, must be provided *before* a private enforcer commences its action. (*DiPirro, supra*, 119 Cal.App.4th at p. 973.) Service of the certificate of merit and supporting data postlitigation would not cure the failure to provide these items 60 days before filing the complaint. While "late service would not interfere with the imposition of sanctions following completion of the lawsuit, it would reduce the effectiveness of prelitigation efforts by the Attorney General to discourage filing the frivolous suit in the first place." (*Id.* at p. 975.) In other words, permitting late filing is no cure at all because it partially frustrates the statutory goal of reducing frivolous lawsuits. Therefore, noncompliance with the prelitigation certificate of merit requirement mandated dismissal of the private enforcer's cause of action. (*Id.* at p. 969.)

■ Second, respondents' adamant assertions notwithstanding, Health and Safety Code section 25249.7 notice is not jurisdictional—it is a mandatory precondition to bringing a citizen enforcement suit. (*Consumer Advocacy, supra*, 150 Cal.App.4th at p. 963.) Where a statute prescribes a condition precedent to establishing a plaintiff's right to commence an action, the failure

to comply with the requirement does not go to the jurisdiction of the court. For example, our Supreme Court has explained that when the trial court entertains an action against a public entity despite noncompliance with the claims presentation requirements of the Tort Claims Act,[3] it commits only an error of law, not an act in excess of jurisdiction. Thus, noncompliance does not divest the trial court of subject matter jurisdiction over a cause of action against a public entity. (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239–1240, fn. 7 [13 Cal.Rptr.3d 534, 90 P.3d 116].)

Proposition 65 notice provisions are analogous to the claims presentation requirements in important respects. The Tort Claims Act requires timely presentation of a written claim to, and rejection of that claim by, the public entity as conditions precedent to suit for money or damages against that body. (Gov. Code, §§ 911.2, 945.4.) The purpose of the claims presentation statutes is to give the public entity sufficient information so it can adequately investigate claims and settle them, if appropriate, without incurring the time and expense of litigation. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 455 [115 Cal.Rptr. 797, 525 P.2d 701].) Similarly, the Proposition 65 notice requirements afford the public prosecutors 60 days to assess the merits of the claim and concentrate efforts on discouraging the filing of a frivolous suit, or resolving matters with the alleged violator prelitigation. Therefore, while Proposition 65 notice provisions are mandatory preconditions to private enforcement, they do not pose jurisdictional hurdles.

 Third, *DiPirro* is clear that the late presentation of a certificate of merit cannot cure the defect in notice *for the very reason that this tardiness defeats one avenue for achieving the statutory purpose of reducing frivolous lawsuits.* (*DiPirro, supra,* 119 Cal.App.4th at p. 969.) Unlike the defective notice in *DiPirro,* here the Center's legal disability when providing notice did not render the notice statutorily defective, nor did it defeat any statutory purpose whatsoever. The public prosecutors and respondents received all the information required, when it was required. No one claims otherwise.

 Fourth, the rule of strict compliance with the 60-day notice requirement, which respondents repeatedly tout, is a rule requiring that notice include adequate information concerning the asserted violations and be provided prelitigation, all for the purpose of enabling the government enforcers to undertake meaningful investigation, work with alleged violators to remedy real violations prior to citizen intervention, and weed out actions that lack merit. (See *Yeroushalmi v. Miramar Sheraton* (2001) 88 Cal.App.4th 738, 740 [106 Cal.Rptr.2d 332] [action dismissed because notices provided insufficient facts to allow meaningful investigation and remedial action]; *Consumer Advocacy, supra,* 150 Cal.App.4th at pp. 960–961 [notice so overbroad it

---

[3] Government Code section 900 et seq.

failed to achieve functions of affording violators an opportunity to cure or public prosecutors the means to meaningfully investigate]; *DiPirro, supra,* 119 Cal.App.4th at p. 975 [failure to file certificate of merit cannot be cured by filing it after litigation commences because tardy filing impairs goal of reducing frivolous suits]; *In re Vaccine Cases* (2005) 134 Cal.App.4th 438, 454–457 [36 Cal.Rptr.3d 80] [following *DiPirro* reasoning, affirmed dismissal of cause of action because notice did not contain certificate of merit].) If, as here, the notice is served on all intended actors, is substantively sound, and all the purposes of providing it are fulfilled, the rule of strict compliance has been met.

Respondents argue nonetheless that because the Center's corporate powers were suspended when it mailed the Proposition 65 notice, that incapacity *invalidated* the notice and deprived the organization of the ability to perfect standing to pursue citizen enforcement in the public interest. Such "lack of standing," they assert, is a substantive defense, like the statute of limitations.

██ We disagree. " 'The question of standing to sue is one of the right to relief and goes to the existence of a cause of action against the defendant [citation].' [Citation.] '. . . Where the complaint states a cause of action in someone, but not in the plaintiff, a general demurrer for failure to state a cause of action will be sustained.' [Citation.]" (*Killian v. Millard* (1991) 228 Cal.App.3d 1601, 1605 [279 Cal.Rptr. 877].) ██ In the case of Proposition 65, Health and Safety Code section 25249.7, subdivision (d) grants authority to "any person" to sue in the public interest. Indeed, a Proposition 65 citizen suit "in the undifferentiated public interest is 'justiciable,' or appropriate for decision in a California court." (*National Paint & Coatings Assn. v. State of California* (1997) 58 Cal.App.4th 753, 761 [68 Cal.Rptr.2d 360] [California Constitution does not contain federal constitutional " 'case or controversy' " requirement which limits federal court jurisdiction].) The interest of an individual citizen in assuring that appropriate warnings are given for exposure to toxic chemicals is substantial and "appropriate for vindication by a 'general citizen' right to sue." (*Id.* at p. 762.)

As we have explained, Health and Safety Code section 25249.7 also dictates procedural prerequisites to commencement of a citizen suit. The statute governs the procedure to be followed in a future trial or legal proceeding. (*In re Vaccine Cases, supra,* 134 Cal.App.4th at pp. 454–455 [amendments to § 25249.7 adding certificate of merit requirement are procedural, affecting conduct of litigation, and thus are deemed to operate prospectively].) These procedural prerequisites to bringing the suit do not impact standing in the fundamental sense of justiciability under California law. Notwithstanding its legal disability at the time of sending notice, the Center

was still a "person" within the meaning of the statute and had standing by virtue of being a person. Its corporate disability did not defeat statutory standing.

Further, the letter of notice had no independent judicial significance at the time of mailing. When notice is served, no case exists and no case is pending. Serving the notice in and of itself does not establish a plaintiff's right to proceed with a Proposition 65 complaint. Instead, the complaint itself must allege that the plaintiff met the dual conditions of Health and Safety Code section 25249.7, subdivision (d), namely giving adequate notice of an alleged violation, followed by the lapse of 60 days without commencement of a public action. (*In re Vaccine Cases, supra*, 134 Cal.App.4th at pp. 456–457.) The Center so alleged and in fact that allegation was correct. The only issue is the Center's suspended corporate status at the time of giving notice and filing the complaint. Since revivor cures defects in the complaint related to corporate disability, it follows that it would cure such a technical defect as it affects the notice letter. We also bear in mind that notwithstanding the Center's incapacity at the time of sending the notice letter, *the notice itself had a life of its own*; it reached respondents and the public prosecutors, and the public prosecutors declined within 60 days to commence a public action. All the statutory purposes were fulfilled. Therefore, once the Center filed the complaint, the issue of its corporate incapacity was but a garden-variety plea in abatement.

For all these reasons, we conclude that the situation at hand is not like the statute of limitations where an intervening act—namely the running of the statute—establishes an affirmative defense. There is no intervening act here; the only defect was the nonsubstantive defect of lack of capacity, a defect which could be cured. If the filing of a complaint under suspended corporate powers is not a nullity but instead subject to reinstatement upon compliance with the revivor statutes, we see no reason in logic why those statutes should not extend to the giving of Proposition 65 notice as a procedural prerequisite to filing the complaint.[4] As we reported in *Benton*, quoting—and agreeing with—the plaintiff's argument to the trial court, " 'If taking a judgment is a procedural act, if appealing is a procedural act, then by definition seeking an extension of time for use permits has got to be procedural.' " (*Benton, supra*, 226 Cal.App.3d at p. 1492.) The same can be said for the giving of the 60-day notice.

---

[4] Lennar criticizes the Center's argument that the arm of revivor should be allowed to reach and cure prefiling actions, positing that such a rule would constitute an unwarranted "expan[sion]" of revivor principles. Not so. Revenue and Taxation Code section 23305a does not distinguish between prefiling and postfiling acts. The issue here is whether the corporate disability provides respondents with an affirmative defense or is a mere plea in abatement. The latter choice is the correct answer.

The purposes of Health and Safety Code section 25249.7 have been amply served, as has the purpose of the suspension statute. After achieving reinstatement and filing all necessary papers, no further purpose is advanced by levying the additional penalty of dismissal.

## III. DISPOSITION

The judgment is reversed.

Ruvolo, P. J., and Rivera, J., concurred.