Filed 10/20/22  Davia v. Be Wicked CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| SUSAN DAVIA,<br><br>        Plaintiff and Appellant,<br>v.<br>BE WICKED, INC.,<br><br>        Defendant and Respondent. | A163076<br><br>(Marin County<br>Super. Ct. No. CIV1704091) |

Defendant Be Wicked, Inc. (Be Wicked), an adult costume and accessories retailer and distributor, and plaintiff Susan Davia entered a consent judgment that, among other things, prohibited Be Wicked from selling or shipping certain products that fail to comply with notice obligations in Proposition 65 — the Safe Drinking Water and Toxic Enforcement Act of 1986.  (Health & Saf. Code, § 25249.5 et seq.)  In a postjudgment order, the trial court awarded Davia $47,293.75 in private attorney general fees (Code Civ. Proc., § 1021.5; undesignated statutory references are to this code) after determining she was a successful party, but it reduced her requested fees by 60 percent and denied her fees for litigating the fee award.  On appeal, Davia argues the court improperly reduced her fee award after erroneously concluding her litigation achieved limited success.  We agree and reverse.

1

## BACKGROUND

Proposition 65 requires companies that expose consumers to chemicals known to cause cancer, birth defects, or reproductive harm to provide a reasonable and clear warning regarding their products. (Health & Saf. Code, § 25249.6.) In February 2017, Davia sent Be Wicked a Proposition 65 prelitigation notice,[1] alleging Be Wicked manufactured, distributed, and sold vinyl packaging and costume storage cases that exposed users to high concentrations of carcinogens di(2-ethylhexyl)phthalate (DEHP) and/or di(isononyl)phthalate (DINP) without any warning of the chemical content or exposure risk. (Cal. Code Regs., tit. 27, § 27001, subd. (b).) As stated in the notice, Davia intended to file a lawsuit unless Be Wicked entered into a binding written agreement to recall products already sold or ensure the requisite health hazard warnings are provided, to provide clear reasonable warnings for future products, and to pay an appropriate civil penalty. (Health & Saf. Code, § 25249.7, subd. (b).)

Shortly after receiving the notice, Be Wicked applied warnings to its products and its website. A few months later, Davia offered Be Wicked the option of joining an existing group settlement with other manufacturers and distributors of similar products. She proposed settling for a $3,000 civil penalty and $15,500 in attorney fees reimbursement for her counsel's work to date. Be Wicked rejected the offer; Davia continued to investigate Be Wicked,

---

[1] This notice is a mandatory condition precedent before a plaintiff can file a Proposition 65 enforcement action. (*Center for Self-Improvement & Community Development v. Lennar Corp.* (2009) 173 Cal.App.4th 1543, 1551.) "It provides the public prosecutors with appropriate information to assess whether to intervene on the public's behalf, and affords the accused the opportunity to avert litigation by settling with the plaintiff or curing any violation." (*Ibid.*)

identifying and cataloguing products that could be in violation of Proposition 65.

Davia ultimately filed a complaint in November 2017 against Be Wicked and e-commerce distributors Wal-Mart Stores, Inc., and Amazon.com, Inc., alleging they failed to warn consumers about exposure to DEHP and DINP from the products. She sought preliminary and permanent injunctive relief to compel defendants to provide Proposition 65 warnings regarding the health hazards of those chemicals, as well as civil penalties of $2,500 per day for each violation, and attorney fees and costs.

The parties engaged in settlement negotiations in April 2018. Although they agreed on the amount of civil penalties and injunctive relief, Davia repeatedly rejected Be Wicked's offers regarding attorney fees. Settlement negotiations were unsuccessful, and the parties proceeded to litigate: Be Wicked filed an answer to Davia's complaint, it responded to Davia's several sets of interrogatories and request for production, and the parties met and conferred regarding discovery and a motion to compel.

The parties ultimately resolved the action through a settlement agreement, which was entered as a judgment in June 2020. Be Wicked was required to notify all existing and new vendors of the phthalate-free chemical concentration standards for Be Wicked's costume and accessory packaging and storage cases. In addition, Be Wicked agreed not to manufacture, sell, or ship any storage cases or packaging that was not phthalate free. Be Wicked also agreed to pay $3,500 in civil penalties. (Health & Saf. Code, § 25249.12, subds. (c)–(d).) The parties did not resolve Davia's attorney fees or costs, however, and instead reserved Davia's right to file a fees motion.

In Davia's subsequent motion for section 1021.5 attorney fees, she requested her full lodestar of $120,764.96 in attorney fees and $2,334.66 in

3

costs. This amount included investigation fees — $22,935, for 57.9 hours multiplied by hourly rates between $150 to $850 per hour — for investigating Be Wicked's product stream of commerce, including laboratory and in-house scientific testing. It also included $71,652.50 in prosecution fees for work performed on the Proposition 65 notice, drafting Davia's complaint, engaging in case management and discovery, as well as engaging in settlement negotiations and settlement approval. $23,842.80 of the requested attorney fees were incurred for the fees and costs motion.

Initially, the trial court issued a tentative opinion denying Davia's request for fees entirely. It determined she failed to establish her litigation conferred a substantial benefit upon the general public or a large class of persons. After a hearing contesting the tentative, however, the court altered its ruling. It expressed concern that while the parties were essentially able to reach an agreement over the terms of proposed Proposition 65 warnings and notifications relatively quickly after the complaint was filed, the "sticking point was always how much Plaintiff would recover in attorney's fees." As a result, the court found, the litigation was extended and resulted in a large motion for attorney fees. Nonetheless, the court concluded Davia was entitled to fees under section 1021.5 — yet it only awarded her $47,293.75 (50 percent of her claimed amounts for investigating and prosecuting the action, and a 60 percent reduction in the entire amount requested). It reasoned that, based on its own experience reviewing similar fee applications, the hours claimed were unreasonably high for accomplishing the stated tasks, such as 10 hours for drafting a "pro forma Prop. 65 complaint." It further explained that in its equitable judgment, success in the action was "limited and secondary when compared to the litigation over

4

a fee award." The court also denied Davia's request to award fees for litigating the fee motion.

## DISCUSSION

Davia contends the trial court erred by reducing her requested fees due to its erroneous conclusion that her litigation achieved limited success. We agree. While experienced trial judges are the best adjudicators of the value of attorney services rendered in their courts, and attorney fee awards are thus reviewed for an abuse of discretion, reversal may be warranted if the record indicates the court considered improper factors. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095; *Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179, 1190 (*Save Our Community*).) That occurred here.

Under section 1021.5, a court may award attorney fees to a successful party in any action that "resulted in the enforcement of an important right affecting the public interest" if the litigation fulfilled certain criteria — a significant benefit to the general public or large class of people; the necessity and financial burden of private enforcement makes the award appropriate; and, in the interests of justice, the attorney fees should not be paid out of any recovery obtained. (§ 1021.5.) The fee inquiry for a prevailing plaintiff under section 1021.5 generally begins with the lodestar method. (*Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 238.) The court first determines the time spent and reasonable hourly compensation for each attorney — the lodestar figure. (*Ibid.*) Next, the court determines "whether that lodestar figure should be adjusted based on various relevant factors." (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 342.)

5

Those factors include the extent of a party's success, "a key factor in determining the reasonable amount of attorney fees to be awarded under section 1021.5." (*Save Our Community, supra,* 235 Cal.App.4th at p. 1185; *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 989.) " 'Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his . . . successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee.' " (*Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 248 (*Sokolow*).) The court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." (*Hensley v. Eckerhart* (1983) 461 U.S. 424, 436–437.)

As a preliminary matter, there is no dispute Davia satisfied the statutory criteria for section 1021.5 attorney fees.[2] Although the trial court questioned the significance of the benefit Davia's litigation conferred on the public given the resources the parties consumed — the first part of a section 1021.5 attorney fee inquiry — it nonetheless determined Davia was entitled to attorney fees under that provision. Moreover, there is no merit to Davia's argument that the court failed to apply the lodestar method when determining the amount of her fee award. The court expressly awarded Davia only 50 percent of her requested investigation and prosecution fees, which Davia acknowledges were calculated using the lodestar method. Reasonably inferred, the court utilized the lodestar method. (*Ketchum v.*

---

[2] Be Wicked argues Davia is not entitled to any fees because she is not a successful party under section 1021.5 and the settlement agreement limits entitlement to attorney fees. These arguments are forfeited. Be Wicked failed to file a cross-appeal and is therefore precluded from obtaining any affirmative relief on this appeal. (*Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1090–1091, fn.4.)

*Moses* (2001) 24 Cal.4th 1122, 1140 [presuming all inferences to support the judgment where the record is silent].)

Nor did the trial court erroneously fail to methodically review Davia's extensive billing entries or reduce the lodestar figure without any analysis. During the hearing on Davia's motion for fees, the court noted it did its "best plowing through" her voluminous motion and submissions. Davia's reliance on the court's misstatement that 10 hours alone were spent on drafting the complaint in this litigation — in actuality, less than two hours were spent drafting the complaint while approximately eight hours were spent researching various defendants and issues related to service — does not demonstrate otherwise. There is no reason to doubt the court examined the evidence presented. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1324.)

But we agree the trial court erroneously concluded Davia's attorney fee award should be reduced based on its determination she achieved limited success in her lawsuit. Success is measured by analyzing the plaintiff's litigation objectives with the objectives the plaintiff actually achieved. (*Sokolow*, *supra*, 213 Cal.App.3d at p. 250 [reducing plaintiffs' claimed attorney fees because they failed to achieve one litigation objective]; *Save Our Community*, *supra*, 235 Cal.App.4th at pp. 1182–1183, 1185 [reduction of fees warranted where plaintiff succeeded on only one of six of its California Environmental Quality Act claims, and none of its conditional use permit claims].) When successful and unsuccessful claims are related, courts *then* assess the level of success or significance of the overall relief achieved by the plaintiff to determine whether those hours spent litigating the unsuccessful claim were reasonably spent. (*Environmental Protection Information Center v. Department of Forestry & Fire Protection*, *supra*, 190 Cal.App.4th at

p. 239.)  Here, however, Davia was successful on *all* of her claims and objectives.  (*Sokolow*, at p. 249.)

Davia filed a single cause of action against Be Wicked for a violation of Proposition 65.  She sought a permanent injunction against Be Wicked, among other defendants, from manufacturing, distributing, or offering products for sale or use in California in the absence of the required Proposition 65 warnings.  In addition, Davia requested Be Wicked be assessed civil penalties.  While Be Wicked began placing the requisite Proposition 65 warnings on its products and website shortly after receiving Davia's notice of violation, the consent judgment also required Be Wicked to instruct storage case and packaging manufacturers to not incorporate any raw or component materials that fail to meet the phthalate-free concentration standards.  The consent judgment further prohibited Be Wicked from manufacturing or ordering any storage cases or packaging that is not phthalate free, and required it to pay civil penalties.

Contrary to the trial court's finding, Davia achieved excellent results. (Cf. Cal. Code Regs., tit. 11, § 3201, subd. (b)(2) [regarding § 1021.5 guidelines for fee awards in settlements, "[r]eformulation of a product . . . or other changes in the defendant's practices that reduce or eliminate the exposure to a listed chemical . . . are presumed to confer a significant benefit on the public"]; *Environmental Protection Information Center v. Department of Forestry & Fire Protection, supra*, 190 Cal.App.4th at p. 239 ["[f]ull compensation may be appropriate where the plaintiff has obtained 'excellent results' "].)  By making a value judgment about the significance of the litigation as secondary to litigating the fee award, the court improperly conflated the first portion of a section 1021.5 attorney fee inquiry — examining whether litigation conferred a significant benefit on the general

8

public — with the lodestar adjustments. Because Davia was successful on her Proposition 65 claim, eliminating specific hours or reducing the award by the hours spent litigating an unsuccessful claim was unwarranted. (*Sokolow*, *supra*, 213 Cal.App.3d at p. 248.) And while the court retained the authority to reduce Davia's award based on a determination the hours were unreasonable, on this record, we cannot separate that justification from the court's improper reliance on the scope of success. (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 622–623 [remanding attorney fee award where ruling was based on trial court's erroneous assessment of the record].) Reducing Davia's fee award on that basis was thus improper, and requires reversal. (*Save Our Community*, *supra*, 235 Cal.App.4th at pp. 1189–1190.) Considering this conclusion, we need not address Davia's remaining arguments for reversing the fee award.

We reverse the fee award and remand to the trial court for further consideration of Davia's request for attorney fees, consistent with this opinion. We take no position on how the court should exercise its discretion on remand. With respect to Davia's request for attorney fees on appeal, we note that "absent circumstances rendering an award unjust, the fee should ordinarily include compensation for all hours reasonably spent, including those relating solely to the fee," as well as those for fees on appeal. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 624.) The court is directed to determine Davia's entitlement to appellate fees in the first instance.

**DISPOSITION**

The order reducing Davia's attorney fees is reversed, and the case is remanded to the trial court to make an award of attorney fees and costs consistent with this opinion. Davia shall also recover her costs on appeal, in amounts to be determined by the trial court. (Cal. Rules of Court, rule 8.278(a)(1).)

_____
Rodríguez, J.

WE CONCUR:


_____
Fujisaki, Acting P. J.


_____
Petrou, J.

A163076

11