Filed 5/22/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE CHEMICAL TOXIN WORKING GROUP INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> BEST NATURALS, INC., et al., <br><br> Defendants and Respondents. | A170985 <br><br> (Alameda County Super. Ct. No. 22-CV-020623) |

Plaintiff filed a complaint against defendants alleging their dietary supplements violated the Safe Drinking Water and Toxic Enforcement Act of 1986. Defendants moved for judgment on the pleadings, on the basis that plaintiff's pre-suit notice failed to strictly comply with the requirement that the notice disclose the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity. The trial court granted the motion and entered judgment for defendants. Plaintiff appeals, contending that the doctrine of substantial compliance applies in the setting here and that such compliance was shown. We agree, and we reverse.

## BACKGROUND

**The Parties**

Plaintiff is the Chemical Toxin Working Group Inc., a California non-profit corporation, doing business as Healthy Living Foundation (for consistency with the briefing below, HLF). HLF describes itself as "a non-profit consumer health organization that: implements measures to reduce the

amount of chemical toxins in foods posing targeted dangers to fetuses, children, pregnant women and women of childbearing age; improves safety for workers by reducing their exposure to chemicals; publishes consumer health periodicals, books, and comparative results." Its chief executive officer is David Steinman.

Defendants are (1) Vita-Pure Inc., a New Jersey Corporation in the business of manufacturing dietary supplements including Valerian Root, Ginger Root, and Ginseng Complex, and (2) Best Nutritionals LLC, also headquartered in New Jersey, which acquires the supplements from Vita-Pure and then sells them, mostly though Amazon or its own website.

**Proposition 65**

In 1986, the voters enacted the Safe Water Drinking Water and Toxic Enforcement Act of 1986, commonly known as Proposition 65, which provides that, "No person in the course of doing business shall knowingly discharge or release a chemical known to the state to cause cancer or reproductive toxicity into water or onto or into land where such chemical passes or probably will pass into any source of drinking water" "without first giving clear and reasonable warning" in the form of posted notices advising the public of such a danger. (Health & Saf. Code, §§ 25249.5 (Section 25249.5), 25249.6.) At the risk of oversimplification, enforcement is given to designated public agencies or "a person in the public interest," who may sue to collect civil penalties or seek injunctive relief. (*Id*., § 25249.7, subds. (a)–(d).)

A private action is subject to a statutory condition precedent:

"(1) The private action is commenced more than 60 days from the date that the person has given notice of an alleged violation of Section 25249.5 or 25249.6 that is the subject of the private action to the Attorney General and

2

the district attorney, city attorney, or prosecutor in whose jurisdiction the violation is alleged to have occurred, and to the alleged violator. . . .

"(2) Neither the Attorney General, a district attorney, a city attorney, nor a prosecutor has commenced and is diligently prosecuting an action against the violation." (Health & Saf. Code, § 25249.7, subd. (d); see *Center for Self-Improvement & Community Development v. Lennar Corp.* (2009) 173 Cal.App.4th 1543, 1551 ["Statutory notice . . . [is] a condition precedent to establishing a citizen's right to commence a Proposition 65 enforcement action"].)

This statute is amplified by an implementing regulation promulgated by the Office of Environmental Health Hazard Assessment, which regulation states in pertinent part:

"(a) For purposes of Section 25249.7(d) of the Act, 'notice of the violation which is the subject of the action' (hereinafter 'notice') shall mean a notice meeting all requirements of this section. No person shall commence an action to enforce the provisions of the Act 'in the public interest' pursuant to Section 25249.7(d) of the Act except in compliance with all requirements of this section.

"(b) Contents of Notice.

"(1) General Information. Each notice shall include as an attachment a copy of 'The Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65): A Summary' . . . prepared by the lead agency. This attachment need not be included in the copies of notices sent to public enforcement agencies. . . .

"(2) Description of Violation. A notice shall provide adequate information from which to allow the recipient to assess the nature of the alleged violation, as set forth in this paragraph. The provisions of this

3

paragraph shall not be interpreted to require more than reasonably clear information, expressed in terms of common usage and understanding, on each of the indicated topics.

"(A) For all notices, the notice shall identify:

"(1.) the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity;

"2. the name of the alleged violator or violators;

"3. the approximate time period during which the violation is alleged to have occurred; and

"4. the name of each listed chemical involved in the alleged violation . . . ."  (Cal. Code Regs., tit. 27, § 25903 (Regulation 25903).)

**The Pre-Suit Notice and The Litigation**

In late December 2021, Vita-pure received a letter entitled "sixty-Day Notice of Intent to Sue" under Proposition 65.  The letter came from Poulson Law P.C. representing HLF, and stated that HLF is the "Noticing Entity." The letter was signed by Aida Poulson, Managing Attorney.

In October 2022, HLF filed a complaint against Vita-Pure and Best Nutritional (collectively, defendants).  The complaint sought injunctive relief, civil penalties, and other relief under Health and Safety Code section 25249.5.  Paragraph 5 of the complaint identifies HLF as the "person" within the meaning of Health and Safety Code section 25249.11, subdivision (a) bringing the action in the public interest.[1]

In March 2024, defendants moved for judgment on the pleadings on the basis that the pre-suit notice did not comply with Proposition 65.  This is how

---

[1]     The complaint also named Amazon, which is not involved in this appeal.

4

defendants distilled their position in their "Introduction and Summary of the Motion's Merit." (Capitalization Omitted.)

"The Proposition 65 pre-suit notice (the "Notice") served by plaintiff [HLF] fails to comply with the plain text of the applicable regulations. As a result, judgment on the pleadings must be granted.

"Critically, the Notice fails to 'identify the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity.' (Cal. Code Regs., tit. 27, § 25903, subd. (b)(2)(A)(1).) Plaintiff's failure to provide this information deprives alleged violators of the opportunity to resolve alleged violations directly with the noticing party and thereby discourages 'resolution of disputes outside of [the] courts.' [Citation.] It also deprives alleged violators of the chance to assess whether the claims are legitimately being pursued on behalf of the 'public interest,' especially where public information about the noticing party is scarce."

HLF filed opposition that included a memorandum of points and authorities and two declarations, of chief executive officer Steinman and Peter Sato, one of its attorneys. HLF's legal memorandum had an "Argument" section under which were nine arguments, and its introduction read as follows:

"The main issue in this Motion is whether HLF's pre-suit notice satisfies the Regulations[ ] requirements by 'adequately' identify[ing] the noticing entity. Defendants incorrectly argue that the court must use a 'strict compliance' standard to evaluate whether HLF's Notice satisfies the Regulations requirements. Defendants actually are arguing for a 'strict construction' of the Proposition 65 Regulations. This is incorrect. The law provides that 'substantial compliance' is the default standard, and the

5

language of the Regulations and legislative intent found in the Final Statement of Reasons support the substantial compliance standard. The Regulations require only 'adequate' information and to be 'reasonably clear'. None of the authorities Defendants cite have applied the 'strict compliance' or 'strict construction' standard to the Proposition 65 Regulations. Furthermore, even under a 'strict compliance' test the HLF Notice is still sufficient because it serves the purpose of the Regulations. Additionally, remedial statutes such as Proposition 65 must be interpreted broadly to accomplish their protective purpose. [¶] Defendant's interpretation of the Regulations is overly narrow and strict, and contradicts the mandate to interpret remedial provisions, such as Proposition 65, broadly to effect its protective purpose. Accordingly, the Motion should be denied."

The motion came on for hearing, prior to which the trial court had issued a tentative ruling granting it, and at the conclusion of the hearing the court adopted its tentative ruling. The ruling set forth the history of the case, then quoted the language of Regulation 25903, subd. (b)(2)(A)(1), following which it concluded with this:

"The Court finds that the notice is defective. The notice did not identify the name, address, and telephone number of the responsible individual with the Healthy Living Foundation. (*See generally* Compl. Ex. A, at 2—4.) Although the Healthy Living Foundation lists the name of its chief officer, it does not mention in the notice that this is the responsible individual within the Healthy Living Foundation. (*See id.*) [¶] The Court is unpersuaded by the Healthy Living Foundation's arguments that this regulation is satisfied where the noticing party lists an officer and its counsel's contact information."

6

That was it, the court saying nothing more about any of HLF's many arguments.

Judgment was entered for defendants, from which HLF filed an appeal. Our review is de novo. (*Consumer Advocacy Group v. Kintetsu Enterprises of America* (2007) 150 Cal.App.4th 953, 962; *Yeroushalmi v. Miramar Sheraton* (2001) 88 Cal.App.4th 738, 744.)

## DISCUSSION

The notice serves multiple purposes: (1) it alerts the alleged violator of a potential problem, thereby allowing it the non-adversarial opportunity to investigate and cure the problem with minimal legal complications; (2) it likewise alerts public authorities to the need for investigation and possible formal intervention on behalf of the public; and (3) it permits the interested parties the opportunity to settle the matter at the pre-litigation stage. (E.g., *Center for Self-Improvement & Community Development v. Lennar Corp.*, *supra*, 173 Cal.App.4th 1543, 1554; *In re Vaccine Cases* (2005) 134 Cal.App.4th 438, 456–457; *Yeroushalmi v. Miramar Sheraton*, *supra*, 88 Cal.App.4th 738, 744; *Sciortino v. PepsiCo, Inc.* (N.D.Cal. 2015) 108 F.Supp.3d 780, 788.)

There is no dispute that the notice did not literally comply with subdivision (d) of Regulation 25903.

HLF's notice is three-pages long. It is on the stationery of a law firm, which advises that it "represents" plaintiffs and that consequently the recipients should "Please direct all communications regarding this Notice to this office." The firm's address and telephone number are set forth on the letterhead. The notice does provide "the name of the alleged violator or violators," and "the name of each listed chemical involved [i.e., lead] in the alleged violation," as required by subdivisions (b)(2)(A)(2) and (b)(2)(A)(4). It

7

does not specifically identify "the approximate time period during which the violation is alleged to have occurred," although it may be inferred from the nature of defendants' business that the violation is on-going. As for subdivision (b)(2)(A)(1), the notice does identify "the name . . . of the noticing. . . entit[ies]," but not "the . . . address, and telephone number of the noticing individual or a responsible individual within the noticing entit[ies]." Additionally, the notice states: "HLF's Chief Officer David Steinman is a journalist, a publisher and an author of a bestseller . . . along with many publications in periodicals and other media."

The parties have filed lengthy briefs—192 pages of briefs, to be precise—devoting extensive attention to a myriad of issues they perceive necessary or germane to a proper resolution of this appeal. We believe that mass can be reduced to whether Section 25249.7, subd. (d) and Regulation 25903 are satisfied by substantial compliance, and whether HLF's notice establishes such substantial compliance.

At the time of the briefing here, the question was one of first impression. However, after the briefing was complete, Division One of the Fourth District filed *Environmental Health Advocates, Inc. v. Pancho Villa's Inc.* (2026) 118 Cal.App.5th 778 (*Pancho Villa's*), which, in a strikingly similar factual setting, has issues virtually identical to our case, to wit: the notice listed a law firm as the entity to be contacted; the trial court granted judgment on the pleadings for defendant; and the issues on appeal were whether the doctrine of substantial compliance was applicable and, if it was, whether the notice was sufficient under that doctrine. In a thoughtful and comprehensive opinion, the Court of Appeal answered both questions "Yes," and reversed the judgment on the pleadings.

8

After full and deliberate consideration, we conclude the reasoning of *Pancho Villa's* is sound, we adopt it as our own, and reverse. We have only one thing to add: here, the notice plaintiff sent to the Attorney General and all "District Attorneys of California Counties and City Attorneys" evoked no response. From this silence can be deduced that not one of the recipients deemed the notice inadequate or misleading.

More recently, just several weeks ago, Division Three of the Second Appellate District filed its opinion in *The Chemical Toxin Group v. Kroger Company* (Apr. 29, 2026, B341662) ___ Cal.App.5th ___ [2026 Cal.App.LEXIS 267] (*Kroger*), addressing the identical issues as in *Pancho Villas* in the setting where the pre-suit notice identified an attorney at the law firm representing the noticing party as the person to contact. Describing *Pancho Villas* as "persuasive," *Kroger* concluded that the doctrine of substantial compliance applied and that the notice was in substantial compliance with Regulation 25903.

So, with our opinion, the noticing entities identifying someone at their law firm are three for three in the Courts of Appeal—and noticed defendants winless.

We end with a closing comment. Running through defendants' position here is criticism that the early involvement of attorneys is counterproductive to the opportunity to resolve claimed Proposition 65 violations without litigation, implicit—perhaps explicit—in which criticism is that attorneys abuse the situation to generate attorney fees. This paragraph in defendants' brief is illustrative:

"Strict adherence serves the pre-suit notice requirement's purpose of resolving alleged Proposition 65 violations without resort to litigation through outside counsel. Direct discussions through principals, as opposed to

9

attorneys, offer the most economical path for resolving disputes. This is especially true for Proposition 65 cases, where outside counsel has an incentive to run up fees and costs by initiating litigation. It is often outside counsel's demand for attorneys' fees (which can encompass up to 75 percent to 90 percent of a total settlement) that drives protracted Proposition 65 litigation. (*Consumer Defense Group [v. Rental Housing Industry Members* (2006) 137 Cal.App.4th 1185,] 1189 [(*Consumer Defense Group*)] [concluding in Proposition 65 private enforcement action that '[t]he bounty hunter lawyers wanted to get paid hefty fees, which is what the whole thing was obviously about in the first place']; *Consumer Advocacy Group Inc. v. Kinetsu Enterprises* (2006) 141 Cal.App.4th 46, 49 [noting that the Legislature sought to prevent settlements 'which simply result in inadequate public warning in exchange for payment of attorney's fees.'].)"

Those early 2000's cases said what they said, the especially colorful *Consumer Defense Group* case chastising counsel at length with criticism after criticism, to the point it set aside a settlement. But whatever the state of affairs in the early 2000's, there is nothing in the record to support that attorneys are currently misusing or abusing the situation for the purpose of generating attorney fees—and thwarting possible settlement. Indeed, the evidence before us indicates the contrary, HLF's chief executive officer Steinman testifying as follows: "In every Proposition 65 case, HLF attempts pre litigation settlements that are in the public interest over lengthy litigation, and therefore designates counsel who resolves the vast majority, over 90% of HLF's cases, without the need for litigation."

In regard to the early involvement of attorneys, one three-paragraph passage in *Pancho Villa's* was particularly compelling. This is that passage:

10

"We have not located any support for the trial court's finding that '[t]he intent behind the pre-suit notice is to enable businesses targeted by Prop[osition] 65 actions to economically and efficiently address concerns raised in the pre-suit notice by directly communicating with the private citizen enforcer.' On the contrary, providing attorney contact information meets the . . . stated objective in 'giv[ing] the receiving parties an opportunity to contact the noticing party to resolve the issues raised in the notice and to identify who will be entitled to pursue a civil action.' By identifying outside counsel, EHA provided 'an opportunity' for Pancho Villa's to contact EHA through its counsel. The ability for EHA to exchange information with Pancho Villa's turns on whether EHA's designated contact person has sufficient knowledge of the alleged violation. His or her employment position does not affect whether that core objective is obtained.

"Despite the trial court's pronouncement that it 'becomes a cumbersome, expensive process if the targeted business is forced to communicate through counsel,' the noticing party's retained counsel may, in fact, be in the best position to communicate about the alleged violation. This is because the certificate of merit must be signed 'by the attorney for the noticing party, or by the noticing party, if the noticing party is not represented by an attorney.' (§ 25249.7, subd. (d)(1).) The Legislature thus requires represented parties such as EHA to act through their attorneys because drafting the notice is an expertise-dense endeavor involving highly complex regulations. The individual executing the certificate must consult with qualified experts concerning the details of the exposure and evaluate whether the enforcement action is meritorious, thus ensuring they are knowledgeable about the nature and extent of the alleged violation. (*Ibid.*) A retained attorney who consulted with experts is well positioned to

11

communicate with alleged violators and public enforcers.  Moreover, the public prosecutor does not need to address the phone number of the complaining entity to decide whether to intervene on behalf of the public.

"Attorney involvement is also appropriate because actions are generally brought against larger companies.  (§ 25249.11, subd. (b) [notices cannot be filed against a business with less than 10 employees].)  Any settlement negotiations with Pancho Villa's would also likely be through the EHA's attorney as settlements are highly technical, involve scientific analysis and multiple legal requirements, and must be approved by the California Attorney General and published on its website.  (Cal. Code Regs., tit. 11, §§ 3003, subd. (c) and 3005.)"  (*Pancho Villas, supra,* Cal.App.5th at 799).

## DISPOSITION

The judgment is reversed.  The matter is remanded with directions to the trial court to vacate its order granting defendants' motion for judgment on the pleadings and enter a new order denying it.  Plaintiff shall recover its costs on appeal.

_____

RICHMAN, J.

We concur.

_____

STEWART,  P. J.

_____

DESAUTELS, J.

(A170985P)

Superior Court of Alameda County

Trial Judge:        Victoria Kolakowski, Judge

Counsel:

Poulsen Law, Aida Poulsen, Peter T. Sato; Keiter Appellate Law, Mitchell Keiter, for Plaintiff and Appellant.

Stuart Kane, Donald J. Hamman and Edward J. Farrell for Defendants and Respondents.